Moncure, P.,
delivered the opinion of the court.
This is a writ of error to a judgment of the Circuit court of Rockingham county, convicting the plaintiff in error of the larceny of two horses, and sentencing him therefor to confinement in the penitentiary for the term of three years, the period ascertained by the verdict of the jury. Several errors in the judgment are assigned in the petition for a writ of error in the case, but all of them were abandoned as unsustainable, by the counsel of the plaintiff in error, on the argument of the case in this court, with the exception of the 5th, which is, that “the verdict fixes the term of imprisonment at three years. This is in direct contravention of law. The act of the General Assembly of Virginia^ Acts of 1865-6, page 88, provides “that any person who shall be guilty of the larceny of a horse, mule or *853 jackass, shall be punished with death, or, in the discretion of the jury, by confinement in the penitentiary for a period of not'less than five nor more than eighteen years.”
The offence, in tins case, is charged in the indictment to have been committed on the 20th day of December, 1868. It is therefore punishable under the act above referred to, which was passed on the 12th day of February, 1866, and has ever since been, and yet is, in full force. And as that act prescribes five years as the •shortest term of confinement in the penitentiary with which the said offence can be punished, and as the term of such confinement, as fixed by the verdict and judgment in this case, is three years only, it follows that in that respect the said judgment is erroneous; and for that cause it must be reversed, though the error is in favor of the accused. And this is admitted by the Attorney-General.
But what is to be done in the ease after reversing the judgment? The counsel for the plaintiff in error •contends that a judgment of discharge from further prosecution must be entered; while the Attorney-General contends that the verdict of the jury must be set aside and the cause remanded to the Circuit court for a venire facias de novo, and further proceedings to be had therein.
The ground on which the view of the counsel for the plaintiff in error rests, is a provision of the constitution of the United States, which is in these words: “Uor shall any person be subject, for the same offence, to be twice put in jeopardy of life or limb; ” and which has been considered to be nothing more than a solemn reassertion of one of the maxims of the common law, that the life of a man shall not be twice in jeopardy for one and the same offence.
This provision of the federal constitution applies, as such, only to the courts of the United States, and not *854 to the courts of the several States; though it has been repeated, in effect if not in words, in some of the State- ■ constitutions—but not in that of Virginia. The common law maxim, however, on which this constitutional provision is supposed to be founded, does exist in Virginia, and seems to go even farther than that provision. Tor while that is confined, in terms, to cases involving-“life or limb,” the maxim extends to all criminal cases.
The only question, therefore, is, not as to .the existence of the principle contended for, but as to its application to this case. Does it require the accused to be discharged from further prosecution, or will it authorize the award of a venire facias de novo to try him again, his former trial having turned out to be abortive?
The counsel for the plaintiff’ in error has cited many authorities in support of his view, which show very clearly that in England, and some of the States of this-Union, there would be a judgment of discharge from further prosecution in such a case as this; at least, there would have been, so long as the rule of the common law prevailed; which, however, seems to have been recently changed in England. The cases of Rex v. Ellis, 5 Barn. & Cress. R. 395; and King v. Bourne, &c., 7 Ad. & El. R. 58; reported in 1 Leading Criminal Cases, pp. 372, 376, referred to by the counsel, are cases directly in point; and the American cases, tending in the same direction, are collected in the notes, appended to that report. See also Whitehead v. The Queen, 7 Ad. & El. N. S.; 53 Eng. C. L. R. 582.
But, in this State, the law was expressly held to be otherwise in Nemo’s case, 2 Gratt. 558. There the verdict of the jury found the accused guilty of voluntary manslaughter, and fixed his term of imprisonment at three years; and upon this'verdict the Circuit court sentenced him to imprisonment- for five years, that *855 being the shortest term prescribed by law for the of-fence. The judgment, thus varying from the verdict, the General court reversed it for this reason; and the verdict being illegal in ascertaining a term of imprisonment shorter than that prescribed by law, the court set aside that verdict, and awarded a venire de novo. See Report of the Revisors, 1849, p. 1027, note to § 7. This decision is sustained by other cases decided in this State; among which are the following: Gibson v. The Commonwealth, 2 Va. Ca. 111; Commonwealth v. Smith, Id. 327; Commonwealth v. Percival, 4 Leigh 686; Mills v. Commonwealth, 7 Id. 751; Commonwealth v. Hatton, 3 Gratt. 623; Marshall v. Commonwealth, 5 Id. 663; S. C. Id. 693; Commonwealth v. Scott, Id. 697. The practice in England and in this State, in regard to new trials in cases of felony, is materially different. In neither country will a new trial be granted when the verdict is in favor of the accused. Uor will a new trial be granted in England, when the verdict is against the accused, and where the proceedings have been regular. If the conviction is improper, the prisoner is respited until a pardon is applied for. In this State, the practice has always been otherwise, and new trials in cases of conviction have frequently been granted on account of irregularity of the jury, misdirection by the court, informality in the verdict, and other causes. 3 Rob. Pr. old ed. p. 271. And such is generally the practice in the other States of the Union : though the supposed wisdom and authority of the common law rule has been strongly commended by one or two of our ablest American jurists, and especially by Mr. Justice Story in United States v. Gilbert, 2 Sumn. R. 19. See Wharton’s American Criminal Law, book 6, ch. 4. But in this State there can now be no doubt on the subject. It was fully considered in Ball’s case, 8 Leigh 726, and the doctrine which had so long prevailed was firmly established by the whole court. Speaking of the Eng *856 lisli rule, the court say: “ Is this principle a part of the common law with us, and are the courts of this ■ State hound by it? "We are all of opinion that it is not, and that our courts are not bound to follow it. It is believed that a contrary practice has long prevailed in this State. Many new trials are remembered by some of the judges, and we think that this practice is suitable to our constitution and laws, and agreeable to justice and humanity. To grant a new trial on the application of the prisoner, cannot be said to be against the maxim that no one shall be twice put in jeopardy of his life for the same offence. As was said by the solicitor-general in the case of the Commonwealth v. Green, 17 Mass. R. 515, it is really granting him a privilege, which may operate to save his life by standing a second trial for it.” Since this decision in Ball’s case, there have been many cases of conviction of the highest crimes in this State in which new trials have been awarded. If the prisoner succeeds in having the judgment against him reversed and annulled, on account of an irregularity in the trial, or a defect in the verdict, he cannot justly complain that he will be twice put in jeopardy for the same offence, if he be required to be tried over again. It is no more than a fair price which he pays for the relief which is afforded him. And it is better that he should pay it than that he should be forever discharged from further prosecution of the crime, not because he is not guilty, but merely because there happens to be some defect in the former proceedings against him, which enables him to have the judgment annulled. In this ease, if the court had discovered, before the jury was discharged, that the term of imprisonment ascertained by the verdict was shorter than the law allowed, the jury would have been sent back to their room to reconsider and correct that matter. But the discovery was not made, and the judgment conformed to the verdict. The error is one *857 of mere inadvertence. And, though the judgment must be reversed therefor, we are of opinion that there must be a venire facias de novo.
But, it appearing that the plaintiff is now in the penitentiary, in execution of the said judgment against him, it will be necessary to have him brought before this coui’t by a habeas corpus, and committed to the custody of the sheriff of Henrico county, to be by him conveyed to the jail of the couxxty of Buckingham, for the purpose of being tried again for the offence aforesaid ; in conformity with the course which was pursued in Barker’s case, 2 Va. Ca. 122. A writ of habeas corpus is therefore awarded accordingly, directed to the superintendent of the penitentiary, commanding him to bring the prisoner before this court at 12 o’clock tomoiTOW morning.
The judgment was as follows:
It seems to the court here, that there is error in the said judgment, in this, that the verdict of the juxy on which it is founded, fixes the term of the plaintiff’s imprisonment in the penitentiary, for the felony of which he was convicted as aforesaid, at three years, to which term of imprisonment he was accordingly sentenced by the said judgment; whereas the shortest term of imprisonment for which he can be sent to the ■penitentiary under the law which applies to this case (Acts of Assembly 1865-66, page 88, chapter 22), is ■five years. "Wherefore, without deciding axiything in regard to the other errors assigned in the petition (which the plaintiff by counsel admitted not to be well assigned, and therefore waived his assignment thereof), it is considered by the court that the said judgment be reversed and annulled. And for reasons stated in writing, and filed with the record, it is ordered that the said verdict of the jury be set aside, and the cause remanded to the said Circuit court of Bockingham *858 county, for a new trial to be bad therein, on a plea of not guilty to be entered by the said court; the plaintiff on his arraignment having refused to plead, and the said court not having had the said plea entered before the former trial, as required by law: which is ordered to be certified to the said Circuit court.
But it appéaring to the court that the plaintiff is now in the penitentiary, in execution of the said judgment against him, it will be necessary to have him brought before this court by a habeas corpus, and committed to the custody of the sheriff of Henrico county,, to be by him conveyed to the jail of Rockingham county for' the purpose of being tried again for theoffence aforesaid; in conformity with the course which was pursued in Barker's case, 2 Va. Cas. 122. Therefore, it is ordered that a writ of habeas corpus be awarded accordingly, directed to the superintendent of the penitentiary, commanding him to bring the plaintiff before this court to-morrow at 12 o’clock, M. to do and submit to what may then be ordered by the court in the premises according to law.
The order was as follows:
This day the said Charles J ones was brought into-court by the superintendent of the penitentiary, in obedience to the writ of habeas corpus awarded in this case on yesterday, directed to the said superintendent. Whereupon it is ordered that the said Charles Jones be committed to the jail of Henrico county, to be from thence conveyed by the sheriff of Henrico to the jail of the said county of Rockingham, to be tried again in the said Circuit court of the said county of Rocking-ham, for the felony in the said indictment mentioned. And it is further ordered that a copy of this order be-forthwith given to the said sheriff, who is required as-, soon as may be, to execute the same, and to employ-the necessary assistance for that purpose; which said *859 sheriff, and the person so employed to assist him, are to he compensated out of the treasury according to law.
Judgment reversed, and prisoner remanded.